## TODD PROTECTOGRAPH CO. v. SAFE-GUARD CHECK WRITER CO.

(District Court, S. D. New York. July 13, 1923.)

I. **Patents ⬅328—793,249, for check protector, held valid and infringed.**

Claims 3, 4, and 5 of the Todd patent, No. 793,249, for machine to prevent raising of checks and designed, in one operation, to print the amount and scarify surface of paper between serrated platen and serrated types, *held* valid and infringed.

2. **Patents ⬅289—Suit brought within 2½ years after manufacture of infringing device resumed not barred by laches or estoppel.**

Where, shortly after plaintiff learned of W.'s manufacture of infringing device, it claimed it to be an infringement, and W. soon afterwards discontinued manufacture and adopted different form of machine, though continuing to sell infringing machines on hand, suit brought within 2½ years after defendant, a purchaser of W.'s business, resumed manufacture of the infringing machine, *held* not barred by laches or estoppel.

In Equity. Suit by the Todd Protectograph Company against the Safe-Guard Check Writer Company. Decree for plaintiff.

Suit in equity under a patent to Todd, No. 793,249, for a machine to prevent the fraudulent raising of checks. The patent having expired since the suit was brought, the suit is resolved into one for an accounting.

Drury W. Cooper, of New York City, and Frederick F. Church, of Rochester, N. Y., for plaintiff.

Frederick P. Fish, of Boston, Mass., and Charles H. Howson, of New York City, for defendant.

LEARNED HAND, District Judge. Two questions are presented which I shall take up separately: (1) Whether the patent is valid and infringed; (2) whether the plaintiff is barred by laches.

[1] 1. This patent has been sustained twice by a Circuit Court of Appeals, once in the Third circuit and again in the Seventh. In addition, there have been two decisions of District Judges not appealed; the last, that of Geiger, J., acknowledged to cover the infringement at bar. This would, of course, have put the matter at rest were it not for the supposed differences between the circuits in their interpretation of the patent. It is not necessary to add anything to the elaborate descriptions of the invention or of the prior art contained in the opinions already written. I shall assume an acquaintance with what they contain, and proceed at once to a discussion of the mooted questions.

There can be no doubt that no one before Todd had produced a machine which combined in one operation scarifying the surface of the paper between a serrated platen and the faces of serrated types with printing by the inked faces of those types. Further, it is not disputed that the ink in such case impregnates the fiber of the paper and makes forging the check more difficult than if the scarifying took place after it had been inked. Beebe's patents, 554,613, 576,999, and 594,319, did, it is true, accomplish a similar though by no means the same result. He did not use types at all, properly speaking, but pricked out his

figures and letters, as it were, by a series of points each having a corresponding counter-sunk die. Thus he was required to have a series of platens each correspondent to a separate type and not capable of use with any other. Moreover, his types were limited to a series of dots, somewhat like the figures flashed in electric signs for carriage calls at theaters and hotels. This was the nearest approach to Todd that had been devised. It was certainly quite different from a set of true types bearing upon their face parallel ridges and grooves which co-operated with a single platen.

The defendant's argument is that, granting so much, there was no invention in combining the well-known cutters or scarifiers, e. g. Hendrick, 104,148, Carlsley, 152,329, or the two British patents, Evans (1879), 3081, Purvin (1899), 3750, with the printing devices of which Todd's earlier patent, 766,853, was itself an example. That there were advantages in using a true type over Beebe's series of points no one can deny. That there was also an advantage in printing direct upon the disrupted fibers of the paper is indeed admitted. The art had contained machines designed to protect checks since 1870, of various kinds, which approached perhaps, but never touched, the invention in suit. When Todd finally did devise the machine he met with much success, having sold more than 500,000 before 1923. It was first appropriated by Whitaker, the defendant's predecessor, with a merely colorable variation; subsequently by the Hedmans and the New Era Company by means of devices, each removed just so far as was thought would escape the last decision, while retaining the value of the discovery.

Such being the situation, how much doubt ought one to have that the combination was an invention? It is idle to speculate a priori upon what new steps are within the imagination of an ordinary journeyman. At times no doubt we must do it, but the history of the art is a safer test, when he have it, and if after numerous efforts a need of long standing is successfully met, it is a mistake to suppose that the answer was all along apparent. One should not so discredit past inventors. On this particular matter a good many minds have been busy; presumably they were at least of average capacity. No one thought of this answer to the difficulty, and after Todd did, every one followed suit. He and his plagiarists were extremely successful.

I should have had no doubt whatever that the combination was an invention, were it not for the view apparently taken of the patent in the Whitaker case. Whitaker had substantially copied the patent, his only change being from literal parallelism of the ridges with the plane of rotation. Thus the court's attention was focused on that feature of the patent and it was unnecessary to consider it more broadly. Even so, Judge Dickinson later gave it a construction inconsistent with the narrow interpretation of his first opinion. Nevertheless, it must be owned that his original refusal to sustain claim 5 will hardly go along with the opinion I have just expressed. Judge Woolley's views are not altogether clear. He did, it is true, call the parallelism of the ridges with the plane of rotation, "the capital conception of the patent," which certainly accorded with Judge Dickinson's limitation of the claims;

but the end of his opinion reads quite differently. There he puts the invention squarely upon the originality of the combination of serrated type with a serrated universal platen. I am by no means satisfied that he meant by what he had said at the beginning of the opinion to put a more limited scope upon it.

However that may be, and greatly as I should defer to his judgment, every one agrees that in the Seventh circuit no such limitation was imposed. I am therefore in any event forced to choose, and I cannot hesitate to hold that the invention is not limited by the means disclosed for easy registration, but that it rests on the much broader combination which I have described. Hence I hold claims 3, 4, and 5 valid.

The case turns then on infringement. Let me first consider the claims verbally. Claims 3, 4, and 5 have nothing to say of parallelism with the plane of rotation like claim 2; this was certainly deliberate. Similarly they omit the adverb "circumferentially." Moreover, it is to be observed that each of them prescribes "ridges" only upon the types and the platen either as having "projecting portions" (claim 3), or "projections" (claim 4), or "impression surfaces" (claim 5). Whether this was deliberate or not I cannot say, but it fits strangely with the defendant's machine, because there can be no doubt that the defendant's types have "ridges," intersecting it is true, but ridges none the less and parallel as well, or substantially. It would indeed be untrue to say that its types also had "grooves," since the intersections of the "ridges" prevent that, but the claims nowhere specify grooves on the types. On the other hand, the defendant's platen has grooves but no "ridges," which are not prescribed. Its series of disconnected points do, however, literally correspond with the language of claim 3, "projecting portions arranged to register with the ink-receiving surfaces and depressions arranged to receive the ridges." It corresponds also with claims 4 and 5.

Hence it seems to me unnecessary to resort to the doctrine of equivalents at all. The claims are general enough even when read literally, though if it were so necessary, I should not hesitate to do it. The defendant has taken all that Todd devised, if that be defined by his contribution to the art. His results it obtains by substantially the same means as he; perhaps it has improved on him, but that does not affect the result. While it would be extreme to attribute to the claims a very broad extension, some latitude would be necessary. Infringers began after Todd's success was apparent to suck the juice of his invention by devices first close and then retreating by steps from his disclosure as the course of judicial decision pushed his protection further. They had the right to creep close if they abandoned the substance of the invention, but not otherwise. It seems to me that in all the forms which infringers have adopted this is just what they have not done. It is the very purpose of the doctrine of equivalents to meet such a case. I find claims 3, 4, and 5 infringed as well as valid.

[2] 2. The second point is of laches and depends upon the following facts: On August 31, 1915, Judge Dickinson rendered his decision against Whitaker, seeming to narrow the claims to types having

ridges and grooves substantially parallel with the plane of rotation. Whether or not thereafter Whitaker thought it too dangerous merely to change the ridge to a more marked angle I cannot tell. When the Hedmans tried it in Chicago and the New Era Company in Philadelphia, they were unsuccessful. Such a change differed only in degree from the obvious evasion upon which Whitaker had just been defeated. Probably he thought it necessary to make a greater departure. In any event, he at once adopted the present form of type and platen and began selling it.

The appeal from Judge Dickinson's decree was decided in April, 1916, and the reference was under way during that summer. The plaintiff had learned of the second machine some time before August 1, 1916, and asserted that Whitaker still infringed the claims. On September 21, 1916, Whitaker's solicitors, who denied the infringement, suggested that the question should be submitted to the master on the accounting in the pending suit. On October 20, 1916, the plaintiff's solicitors replied that they thought well of this suggestion and would take it up later. There the matter rested and the accounting was never completed. Whitaker, however, stopped making this second machine on January 1, 1917, and never resumed, though some 800 machines remained on hand which he gradually sold off by September, 1917. In November, 1917, he sold out his business to the defendant which continued and greatly increased it. When he discontinued making the second machine on January 1, 1917, he substituted a third machine, which was clear of the patent, and which the defendant continued to make until March, 1918, when it resumed the manufacture of Whitaker's second type, i. e. that in suit.

In November, 1920, the plaintiff, having concluded the two suits with the Hedmans in the Seventh circuit ([C. C. A.] 265 Fed. 273), the last of which involved a machine substantially the same as that in suit, brought suit in the Seventh circuit against the defendant charging that the present machine infringed. To this suit the defendant pleaded in abatement, and the plea was sustained in May, 1921. This bill was filed on October 24, 1921.

On such a state of facts the defense of laches cannot succeed. It would have been stronger had there been a continuous infringement for five years, though I am aware of no case where an accounting has been denied for so short a delay unaccompanied by some evidence of estoppel. Nor should there be. The defendant in such cases is a wrongdoer, and he must not escape merely because the plaintiff does not at once raise hue and cry. There has, I have observed of late, spread an impression among the bar that courts will easily deny an accounting because of short delays. I do not so understand it; such a result appears to me unjust. I cannot regard a man as getting a vested interest in the right to commit a tort, because merely of his victim's inaction within the statutory period. Nor do I see that his case is mended because he supposes after one defeat that he is within the obiter dicta of the opinion which defeated him.

But if I am wrong, in any case this is not a case of five years' uninterrupted infringement. When Whitaker stopped making his machine

in January, 1917, the plaintiff had reason to suppose that he had abandoned it. It might well have regarded what was done up to that time as not justifying the expense and delay of an accounting. Its letter of October 20th and its consequent inaction gave no assurance that it was content to let Whitaker or his successors renew the wrong. Nor do I count the fact that he took eight months of 1917 to close out his old stock; that was merely an incident to the cessation which the plaintiff could well include in its conditional condonation.

After the defendant began in March, 1918, there was no excessive delay. No case even remotely suggests that 2½ years will bar an accounting. Nor was there any act which can be strained into an estoppel. The defendant had no assurance of security. The Hedman suits showed that the plaintiff would not accept a limited interpretation of the claims, and after May, 1920, when Judge Geiger's opinion came down, it appeared that they would be successful. Just how the defendant can present itself as deluded by the plaintiff's conduct I do not see.

The case seems to me no more than an ordinary one where an infringer has insisted on enjoying an invention while keeping just out of what he conceived to be the reach of the court. I do not mean to say that there is anything morally wrong in that—people might differ— but I do mean that it makes any claim of estoppel rather thin.

The usual decree for an accounting will pass before Wallace Macfarlane, Esq.